In the Matter of the Arbitration Between the New Brunswick Theological Seminary, Petitioner,

against
Victoria Anne Van Dyke, Respondent.


600869-18

MCELROY, DEUTSCH, MULVANEY & CARPENTER LLP
Attorneys for Petitioner
225 Liberty Street, 36th Floor
New York, New York 10281
LATHAM & WATKINS LLP
Attorneys for Respondent
885 Third Avenue
New York, New York 10022


Elizabeth H. Emerson, J.

Upon the following papers read on this petition to confirm arbitration award and cross-motion to vacate award ; Notice of Petition and supporting papers 1-6 ; Notice of Cross Motion and supporting papers13-17 ; Answering Affidavits and supporting [*2]papers26; 28-39; Replying Affidavits and supporting papers45-46; it is,
ORDERED that the petition for an order confirming an arbitration award dated January 12, 2018, in favor of the petitioner and against the respondent in the amount of $3,229,097.00 with interest at the rate of 2.5% from July 17, 2017, until the award is paid in full, and for leave to enter a judgment thereon is granted; and it is further
ORDERED that the cross motion by the respondent for an order vacating the aforementioned arbitration award and dismissing the petition is denied.
The respondent is a retired investment banker. In 2000, she entered into an agreement with the petitioner to act as its investment advisor and broker. The respondent managed the petitioner's investment account until May 4, 2016, when the petitioner terminated her services. The Financial Industry Regulatory Authority ("FINRA") subsequently opened an investigation concerning the respondent's alleged mishandling of customer accounts, including the petitioner's account. On May 15, 2017, FINRA issued a notice of its intention to suspend the respondent due to her failure to respond to FINRA's request for information. On June 5, 2017, she appeared and requested a hearing. On June 26, 2017, she withdrew her request for a hearing. As a result, she was deemed to have abandoned her claimed defense, and she was permanently barred from the securities industry effective August 18, 2017.
FINRA's rules require that disputes involving its members and associated persons such as the respondent, including disputes arising from customer complaints, be resolved through arbitration. FINRA maintains jurisdiction over associated persons who have been barred from the securities industry for at least two years following their termination. FINRA requires all associated persons, including those who have been terminated, to maintain and update their current address with FINRA for service of process. In addition, as of April 3, 2017, FINRA requires that parties serve and file pleadings and other documents through its electronic portal (the "DR Portal").
The petitioner proceeded to arbitrate its claims against the respondent and others. By a memorandum dated July 26, 2017, FINRA advised the respondent that she had been named as a party in an arbitration commenced by the petitioner. The memo also advised the respondent that, pursuant to FINRA's rules, she was required to use the DR Portal, inter alia, to download the petitioner's Statement of Claim. The memo was sent by certified mail to the respondent's home addresses in New York City and Sag Harbor, New York. Both were returned as "unclaimed, unable to forward." In a memorandum dated August 24, 2017, that was sent to the respondent's New York City address, FINRA advised the respondent that all of the petitioner's claims against the other respondents had been dismissed and that the case would continue to proceed against her. In a memorandum dated September 18, 2017, that was sent to the respondent's New York City address, FINRA again advised the respondent that she was required to use the DR Portal and that her failure to register therefor would prevent her from submitting pleadings, selecting arbitrators, and receiving notifications related to the case. The record does not reflect that either the August 24, 2017, memo or the September 18, 2017, memo was returned. FINRA also sent an Overdue Notice and List of Potential Arbitrators to the respondent's New York City address. The record reflects that the Overdue Notice and List of Potential Arbitrators was not returned. 
The respondent failed to appear. In a memorandum dated October 27, 2017, FINRA [*3]advised the petitioner's counsel that the petitioner's claim against the respondent would be processed in accordance with FINRA's default procedures. A copy of the memorandum was sent to the respondent's New York City address by certified mail, return receipt requested. It was returned as "unclaimed, unable to forward."
The matter proceeded to arbitration without an appearance by the respondent. The arbitrator determined that, since the respondent had been served with notice of the Statement of Claim by regular mail and with the Overdue Notice and Notification of Arbitrator by certified mail, she was bound by the arbitrator's ruling and determination.[FN1]
Pursuant to a decision dated January 12, 2018, the arbitrator awarded the petitioner $3,229,097.00 with interest at the rate of 2.5% from July 17, 2017, until the award is paid in full.
The petitioner commenced this proceeding to confirm the arbitrator's award. The respondent cross moves to vacate the award on the ground that the arbitrator erred in finding that service had been effected. The respondent contends that the arbitrator's finding that she was properly served by regular mail is contradicted by the documentary evidence. The Service History Report issued by FINRA shows that service was effected by certified mail and that the certified mail was not delivered. The respondent contends that she was severely prejudiced by the arbitrator's error, that she was deprived of due process, and that it would be fundamentally unfair to confirm the arbitration award under these circumstances.
According to the respondent, she was in California from June 27, 2017, until December 2, 2017, and she did not receive notice of the arbitration until January 19, 2018, when she was served with the petition at her home in Sag Harbor. She avers that, while she was in California, the mail sent to her Sag Harbor address was held at the Post Office and that the mail sent to her New York City address was de minimus enough to fit in the mailbox. She contends that, when she returned to New York, she did not prioritize going through the months of held mail and that she was still going through it when she was served with the petition and arbitration award on January 19, 2018. The respondent contends that, since the petitioner knew how to contact her by email, it should have notified her of the arbitration by email. The respondent also contends that FINRA advised the petitioner that service had not been perfected. In support thereof, she relies on a memorandum dated September 13, 2017, from FINRA to the petitioner's counsel advising him that FINRA had been unable to perfect service on her and that, since the petitioner had the burden of proving proper service, it might use an outside source to locate and serve her.[FN2]
The respondent also relies on FINRA's September 18, 2017, memorandum to her, which was copied to counsel for the plaintiff, in which FINRA recommended that the petitioner serve her "by first class mail, overnight mail or delivery service, hand delivery, facsimile, or electronic mail" until she was registered on the DR Portal. The respondent contends that, instead of attempting to [*4]perfect service, the petitioner continued to prosecute its claim against her while she was in California and unaware of the arbitration.
An arbitration award will be vacated if the arbitration violated due process (Matter of Beckman v Greentree Sec., 87 NY2d 566, 570). Due process does not require actual receipt of notice before a person's liberty or property interests may be adjudicated (Id.). It is sufficient that the means selected for providing notice was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections (Id.). The means employed must be such that one desirous of actually informing the absentee might reasonably adopt (Id.). The notice procedure chosen need not eliminate all risk that notice might not actually reach the affected party (Id.). The Court of Appeals has specifically held that due process is satisfied when notices sent by certified mail were returned "unclaimed", but the ordinary mailings were not, and the sender took no steps to obtain an alternative address (Matter of Roslyn Jane Holdings, LLC v Jefferson, 144 AD3d 1041, 1042). 
Pursuant to FINRA's rules, FINRA maintained jurisdiction over the respondent for at least two years after she was barred from the securities industry, and she was required to maintain and update her address with FINRA for service of process. The record reflects that the address FINRA had for service of process on the respondent was her New York City address. FINRA served the respondent by certified mail, in accordance with its rules, at that address and at an alternate address in Sag Harbor. After the initial notices were returned as "unclaimed," FINRA sent multiple documents and correspondence to one or both addresses that were not returned. In addition to the August 24, 2017, memo; the September 18, 2017, memo; and the Overdue Notice and List of Potential Arbitrators, FINRA sent three mailings to the respondent after she returned to New York. Copies of the petitioner's Supplemental Submission in Further Support of the Statement of Claim were sent to the respondent's New York City address by certified mail and to her Sag Harbor address by regular mail on December 5, 2017. Another copy was sent to her New York City address on December 20, 2017, and an updated copy of the Arbitrator Disclosure Report was sent to her New York City address on January 2, 2018. The record does not reflect that any of those mailings were returned. Moreover, all of the documents and correspondence related to the arbitration were available to the respondent on FINRA's DR Portal. Pursuant to FINRA's rules, the respondent was required to register for the DR Portal. The respondent proffers no excuse for her failure to register for the DR Portal or for her failure to update her address with FINRA while she was in California.
The respondent knew, or should have known, that the petitioner might proceed to arbitration while she was in California. The record reflects that the respondent was a seasoned investment banker and broker who presumably was aware that FINRA retained jurisdiction over her for at least two years following her termination from the securities industry. Moreover, she was definitely aware that FINRA had opened an investigation concerning her alleged mishandling of the petitioner's account, among others. That investigation concluded with her being permanently barred from the securities industry. It is reasonable to assume that, under those circumstances, the respondent should have expected that the petitioner, or one of the other complainants, would pursue its arbitral remedies against her. Yet, the respondent left the state for approximately five months without advising FINRA of her address in California and without [*5]even forwarding her mail. The respondent's explanation that she did not expect any correspondence of importance to arrive by mail while she was out of state strains credulity.
After the respondent returned to New York on December 2, 2017, she received three mailings from FINRA between that date and January 12, 2018, when the arbitrator issued the award. FINRA's rules allowed the respondent to open up her default and file an answer to the petitioner's claim any time before the award was issued. She, therefore, had approximately 40 days to contact FINRA and file an answer after returning to New York. Yet, she did nothing. Her explanation that she did not prioritize going through the months of held mail and that she was still going through it more than 40 days later when she was served with the petition on January 19, 2018, also strains credulity. The mailings that were sent by FINRA after she returned to New York would not have been included in the mail that was held at the Post Office.
In view of the foregoing, the court finds that the respondent was not deprived of due process. The initial notices were sent to the respondent at the New York City address that she provided to FINRA for service of process and to her alternate address in Sag Harbor. The court finds that they were reasonable calculated to apprise the respondent of the pendency of the arbitration and to afford her an opportunity to present her objections (Matter of Beckman v Greentree Sec., supra). Although they were returned as "unclaimed," additional mailings were sent to the same two addresses. Only the notice of default was returned. The respondent, for her part, made no effort to ensure that she received mail from FINRA while in California, although she knew or should have known that the petitioner might proceed to arbitration. She failed to provide FINRA with her address in California, as required, and she failed to have her mail forwarded. There was correspondence from FINRA waiting for her when she eventually came back to New York, and more mail was sent by FINRA after she came back that was not returned. The court finds that, under these circumstances, a strong inference may be drawn that the respondent was attempting to avoid receiving any mail from FINRA and that she ignored the mail that was received. Accordingly, the petition is granted, and the cross motion is denied.
Dated:August 13, 2018
 
J.S.C.



Footnotes

Footnote 1:The record reflects that the respondent was initially served with notice of the Statement of Claim (i.e., the July 26, 2017, memo) by certified mail and that the Overdue Notice was sent by regular mail. 

Footnote 2:The petitioner contends that the September 13, 2017, memo was sent in error and subsequently withdrawn. In support thereof, the petitioner relies on a hearsay email between two of its own attorneys and the fact that the memo does not appear in the case docket on the DR Portal.